UNITED STATES *v.* PENDERGAST.

*(Circuit Court, E. D. Missouri, E. D.　April 11, 1887.)*

1. EXPERT TESTIMONY—OPINIONS—WEIGHT.
　　Expert testimony should be received and acted upon with much caution. It is not entitled to the same weight as the testimony of persons who speak concerning matters within their personal observation. Statements of expert witnesses should be regarded as *opinions merely,* and such weight only given them as they deserve, considering the experience which the experts have had in the matters about which they testify.

2. ACCUSED AS WITNESS—FAILURE TO TESTIFY—PRESUMPTION OF GUILT.
　　There is no presumption of guilt against a defendant merely because he has not taken the stand as a witness in his own favor.

Indictment under section 5512, Rev. St. U. S.

This was an indictment under that clause of section 5512, Rev. St. U. S., which provides that "if at a registration of voters for an election of representative or delegate in congress * * * any officer of registration, * * * who has any duty to perform in relation to such registration, * * * *does any act unauthorized by law relating* to or affecting such registration or election, or the result thereof, * * * shall be punishable," etc. Defendant was registration officer, duly appointed and qualified, for the Third ward of the city of St. Louis, Missouri, at the registration for the congressional election held in the Ninth congressional district of Missouri on November 2, 1886. The laws of Missouri applicable to registrations for elections held in the city of St. Louis, Missouri, required applicants for registration to appear before the registration officer of the wards wherein they resided, and give their true names and places of residence, which were to be entered in a book called a

"Book of Registration," and furthermore to take an oath before the officer to the effect, among other things, that they had registered in no other election precinct, that they had given their true names, and lived at the places designated in the registration book, and had truly answered all questions propounded by the registration officer touching their registration. Sess. Laws Mo. 1883, pp. 38–41, §§ 2, 3, 6, 11.

The "act unauthorized by law," charged in the indictment to have been committed by the defendant, consisted in writing the names of 33 persons in the registration book while it was in his custody as an officer of registration, who had not applied to him to be registered, and who had not taken the oath required to be taken by the laws of Missouri by persons seeking registration. In behalf of the prosecution there was testimony tending to show that several of the 33 names, alleged to have been written in the registration book by the defendant, were names of fictitious persons; that no such individuals resided at the places from which they purported to be registered. Four of the 33 persons whose names were alleged to have been written in the registration book by the defendant were produced by the prosecution, and testified that they did not apply to the defendant for registration. Two experts in handwriting were called by the prosecution, who, on comparison of the 33 names in the registration book with defendant's signature to his oath of office as a registration officer, expressed the opinion that 22 of the 33 names were written by the defendant.

Other facts sufficiently appear in the court's charge to the jury.

THAYER, J., (*charging jury.*) The statutes of the United States in effect declare it to be an offense punishable by fine and imprisonment if an officer of registration, at a registration had for an election for a representative in congress, knowingly does any act relating to or affecting such registration, which act is unauthorized by the laws of the state where such registration is had, or by the laws of the United States. The registration laws of the state of Missouri applicable to the city of St. Louis, (Sess. Laws Mo. 1883, pp. 38, 39,) in substance provide that a person applying for registration to the recorder of voters, or to any deputy recorder, appointed for any given ward of the city, must appear before the registration officer, and take an oath to the effect that he has not registered elsewhere, that he has given his true name, and that he lives at the place he has designated on the registration list; and unless there is such appearance, and such information is given as to name and residence, and unless such oath is taken, the registration officer is not authorized to enter the voter's name on the registration book, or suffer it to be so entered by the voter himself, or by any other person. Such being the law of the state, it follows, gentlemen, that if the defendant did the act charged in this indictment,—that is to say, if he wrote the names of persons in the registration book who did not apply to be registered,—he did an act which was not only unauthorized by the law of this state, but was an open violation of such law, and in so doing he committed an offense against the laws of the United States.

The general question which you have to determine is whether the defendant, while acting as recorder of voters of the Third ward of this city, in September last, did knowingly and willfully enter on the registration books in his custody the names of any of the persons mentioned in the indictment, when the persons themselves neither applied for registration nor took the oath required of voters. If the evidence on the part of the government has satisfied you beyond any reasonable doubt that the defendant did. so enter any or all of said names mentioned in the indictment on the registration book, then he should be found guilty. In this connection it is proper to add, gentlemen, that it makes no difference whether the names so entered on the registration books, without the appearance or request of the persons so registered, and without their taking the oath, were the names of real persons then or theretofore residing in the Third ward, or whether they were the names of fictitious persons. In either event the offense was committed by writing the names of such persons on the list without their applying for registration or taking the oath required of voters, if the proof shows beyond a reasonable doubt that they were so written by the defendant. Furthermore, gentlemen, from the fact that the act charged is an unlawful act, if you find it to have been done knowingly and willfully, you may infer that it was done with an évil or criminal intent.

Now, gentlemen, with regard to the testimony that has been offered, I shall only call your attention to certain portions of it. The prosecution have produced Tillman Puetz, William Wells, William Schwacheim, and O. M. Billmeyer, whose names appear on the registration book, and the same names also appear among the names mentioned in the indictment. These witnesses have sworn that they did not write their names in the registration book shown to you, or apply to the defendant for registration, or take the oath required of voters. Testimony has also been offered by the prosecution of the general purport that no such persons as John Rogers, Thomas Collins, and Albert Reil, whose names appear in the registration book, and in the indictment, resided at, or were known to the occupants of, the houses bearing the street numbers from which Rogers, Collins, and Reil appear to have been registered. It is for you, gentlemen, to determine in the first place what credence you will give to such testimony; and, in the event you believe the same, it will be for you to consider what inferences may be properly drawn from such facts.

There is another class of testimony before you to which the court desires to allude briefly. It is what is generally known as expert testimony. Two witnesses have been produced, and in your presence they have compared 22 of the 33 names appearing on the registration book, being the same names mentioned in the indictment, with what purports to be the defendant's own signature to an oath of office contained in a book kept last fall in the office of the recorder of voters of this city. After such comparison these witnesses have expressed the opinion that the signature to the oath and the 22 names in the registration book were written by the same hand. Now, gentlemen, assuming that both of these witnesses are disinterested and unbiased, and otherwise credible,

the nature of that class of testimony is such that it should be received and acted upon by you with much caution. Testimony of that kind is not entitled to the same weight as the testimony of persons who speak concerning matters within their personal observation, because these witnesses simply express opinions which they entertain, founded on the comparison made, and you should regard their statements in this matter as *opinions merely*, and give them such weight only as you think they deserve, considering the experience which the experts have had in making such comparisons. You are also entitled to look at the signatures yourselves, (as you have already done,) and form your own opinion, and draw your own conclusions on the subject from such comparison of the signatures as you may have yourselves made.

On the part of the defendant two persons have been produced, (John F. P. Lynch and J. P. Willi,) both of whose names appear on the registration book, and also among the names mentioned in the indictment as having been written on the list by the defendant, and both have testified that they appeared before the defendant, took the oath, and themselves signed the registration lists. The names of these two persons, however, are not in the list of 22 names which the experts say are in defendant's handwriting. These are the only witnesses produced by the defendant. But I call your attention, gentlemen, in this connection, to the unvarying and very just rule of law, that every man is presumed to be innocent until he is proven to be guilty. Even if the defendant had not offered any evidence whatsoever, it would be your sworn duty to acquit him of the charge, unless the evidence for the prosecution satisfies you beyond a reasonable doubt of his guilt.

This is the main question which you will have to consider in your retirement,—whether the evidence on the part of the government, taken altogether, is of such conclusive character as to leave no room for a reasonable doubt of the defendant's guilt. If the evidence gives you such confident assurance of his guilt, return a verdict of guilty. On the other hand, if the testimony leaves you reasonably in doubt as to his guilt, (and you must determine the question fairly and without bias, on the testimony you have heard in this court-room and in this case,) then you should return a verdict of acquittal. From the fact that defendant has not asked to testify in his own favor you cannot indulge in any presumptions against him. The law will not permit you to indulge in any presumptions against him merely because he has not taken the stand as a witness in his own favor.

You can take the case.